UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD SLUSS,
      Petitioner,

vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:15-cv-395

Bertelsman, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in

Chillicothe, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254. (Doc. 1). This matter is before the Court on the petition, respondent's return of writ, and

petitioner's "traverse" in reply to the return of writ (Docs. 1, 7, 10).[1]

## I. PROCEDURAL BACKGROUND

### State Trial Proceeding

In August 2013, the Highland County, Ohio, grand jury returned an indictment charging

petitioner with two counts of illegal manufacture of drugs in violation of Ohio Rev. Code §

2925.04(A) (Counts One and Two) and one count of illegal assembly or possession of chemicals

for the manufacture of drugs in violation of Ohio Rev. Code § 2925.04(A) (Count Three). (*See*

Doc. 6, Ex. 1). The facts giving rise to the charges were summarized as follows by the Ohio

Court of Appeals, Fourth Appellate District, based on evidence presented at petitioner's trial:[2]

---

[1] Respondent has also separately filed 17 exhibits obtained from the underlying state-court record. (*See* Doc. 6).

[2] The Ohio appellate court summarized the facts in its direct appeal decision issued September 16, 2014. (*See* Doc. 6, Ex. 11). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, the appellate court's findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

> On three occasions during the 2013 summer, the Highland County Sheriff's Department searched trailers at 6430 Riber Road in Highland County. On all three occasions, Barb Sluss, appellant's former spouse, met them at the premises and gave permission to search the trailers. Those searches yielded methamphetamine (meth) and chemicals necessary to produce them.
>
> ****
>
> At the jury trial, the most damaging testimony, aside from Highland County law enforcement authorities, came from Lacey Kelley who testified that she was with appellant on occasion and observed him "cooking" meth. Greg Grooms also testified that he retrieved a "mix" for appellant to use in cooking meth, although he was not involved in the cooking process himself. The defense offered Barb Sluss'[s] testimony (appellant's former spouse), but at no time did she contradict the State's evidence.

(*Id.*, Ex. 11, pp. 2-3, at PAGEID#: 150-51).

Prior to trial, petitioner's trial counsel filed a motion to suppress "any all physical evidence obtained against the Defendant . . . as it was illegally obtained in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 14 of the Ohio Constitution." (*Id.*, Ex. 3). The motion was denied following a hearing held on October 4, 2013. (*See id.*, Ex. 4). In the entry denying the suppression motion, the trial court found that petitioner's ex-wife was residing with petitioner on the three dates in question and that she "gave voluntary consent to [the] Detective … to search the premises." (*Id.*).

The matter then proceeded to trial before a jury, which found petitioner guilty as charged. (*See id.*, Ex. 5). On October 8, 2013, following a sentencing hearing, the trial court issued the final judgment entry sentencing petitioner to an aggregate term of imprisonment of fourteen (14) years, which consisted of the following consecutive sentences: six-year "mandatory" prison terms for the illegal-manufacture offenses charged in Counts One and Two and a two-year prison term for the illegal-assembly offense charged in Count Three. (*Id.*, Ex. 6).

<strong>State Direct Review Proceedings</strong>

Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals,

2

Fourth Appellate District, on petitioner's behalf. (*See* Doc. 6, Ex. 7). Thereafter, with the assistance of new counsel appointed for appeal purposes, petitioner filed an appellate brief raising the following assignments of error:

1. The trial court erred in overruling Appellant's motion to suppress evidence based on a violation of the Fourth Amendment protections against unreasonab[l]e search and seizure.

2. Appellant was not afforded the effective assistance of trial counsel [when (a) counsel failed to object to the State's admission of expert testimony regarding the presence of Methamphetamine on numerous exhibits before the chain of custody was established, and (b) counsel failed to object to the State's repeated use of leading questions].

3. The trial court erred as a matter of law in not me[r]ging together the two illegal manufacture charges with the illegal assembly charge, based on the actual trial evidence.

4. The trial court erred as a matter of law in convicting Appellant on the basis of an indictment that was supported by a defective bill of particulars.

(*Id.*, Ex. 8).

On September 16, 2014, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 11).

Petitioner did not pursue a timely appeal to the Ohio Supreme Court. However, he filed a *pro se* motion for leave to file a delayed appeal, which was granted. (*See id.*, Exs. 12-14). In his memorandum in support of jurisdiction, petitioner presented the following claims as propositions of law:

1. The trial court erred in overruling Appellant[']s motion to suppress evidence based on a violation of his Fourth Amendment protections against unreasonab[l]e search and seizure.

2. Appellant was not afforded the effective assistance of trial counsel . . . when Defense Counsel did not Object to the State[']s Admission of Expert Testimony Establishing the Presence of Methamphetamine on Numerous Exhibits Prior to Establishing the Chain of Custody.

3

3. Appellant was not afforded the effective assistance of appellate counsel. . . . Appellate counsel did not put a separate Statement of the assignment of the error so the court of appeals of Ohio Fourth appellate District had Taken the assignments of error from the brief[']s table of contents[.]  Appellant was not Affor[d]ed the Effective Assistance of Trial counsel when defense counsel did not object to State[']s repeated use of leading questions[.]  [D]efense counsel also elicited Testimony that was certainly detrimental to the defense. . . .

4. The trial court erred as a matter of law in not me[r]ging together the two Illegal Manufacture charges with the Illegal Assembly charge based on the actual trial evidence.

5. The trial court erred as a matter of law in convicting Appellant on the basis of an indictment that was supported by a defective bill of particulars.

(*Id.*, Ex. 15, at PAGEID#: 215-17).

On October 8, 2014, the Ohio Supreme Court issued an Entry declining to accept jurisdiction of the appeal.  (*Id.*, Ex. 17).

### Federal Habeas Corpus Petition

In June 2015, petitioner filed the instant federal habeas corpus petition.  (*See* Doc. 1).

Petitioner presents the following grounds for relief:

**Ground One:**  The trial court erred in overruling Appellant's motion to suppress evid[ence] based on a violation of the 4th Amendment protection against unreasonable search and seizure.

**Supporting Facts:**  The State failed to present sufficient evidence at a suppress[ion] hearing that Appellant's ex-wife had the authority to grant permission to the State's witnesses to search the back of a camper, as there were separate residence[s] on the property, and none of the residents were called to testify that Barb Sluss lived there having any authority.

**Ground Two:**  Ineffective assistance of trial counsel.

**Supporting Facts:**  Trial counsel failed to object to the State[']s admission of expert testimony establishing the presence of methamphetamine on numerous exhibits prior to establishing the chain of custody, violating Ohio Evid. R. 703.

**Ground Three:**  Petitioner rec[ei]ved ineffective assistance of appellate counsel.

**Supporting Facts:**  Appellate counsel failed to put a separate statement for the

assignment of errors, and failed to address that Appellant/Petitioner was denied effective assistance of trial counsel.

**Ground Four:** The trial court erred in failing to merge Petitioner's sentences.

**Supporting Facts:** Petitioner's sentences should have merged pursuant to Ohio [Rev. Code §] 2941.25, and same acts, transaction doctrine where possessing and manufacturing of the same drugs occurs, with the same state of mind.

(Doc. 1, at PAGEID#: 5, 6, 8, 9).

Respondent has filed a return of writ addressing each ground for relief, and petitioner has filed a "traverse" in reply to the return of writ. (Docs. 7, 10).[3]

## II. OPINION

### A. The Fourth Amendment Claim Alleged In Ground One Is Barred From Review

In Ground One of the petition, petitioner asserts a Fourth Amendment claim challenging

---

[3] It is noted that petitioner's "traverse" is difficult to follow because it only partially corresponds to the four grounds for relief alleged in the petition and appears to raise new claims, including new ineffective-assistance-of-trial-counsel claims that were never presented to the state courts as well as the claim alleged as the fourth assignment of error and fifth proposition of law in petitioner's briefs on appeal to the Ohio Court of Appeals and Ohio Supreme Court. (*See* Doc. 10). Because the additional claims were not presented as grounds for relief in the petition and petitioner has not moved to amend the petition to include them as grounds for relief, the undersigned will address only those claims that are alleged in the petition. In any event, to the extent that petitioner raises new claims in his "traverse" brief that were never presented to the state courts for consideration, a strong argument can be made that those claims were procedurally defaulted by petitioner and thus barred from review by this Court. *See* 28 U.S.C. § 2254(b)(1), (c); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 847-48 (1999); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). In addition, a strong argument can be made that the one new claim in the "traverse" brief that was raised on direct appeal was procedurally defaulted by petitioner because the Ohio Court of Appeals, as the last state court to issue a reasoned decision on the matter, expressly found that petitioner had "waived" the claim by failing to bring it to the trial court's attention and, therefore, refused to consider the claim except for "plain error." (*See* Doc. 6, Ex. 11, pp. 13-15, at PAGEID#: 161-63); *see also Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005) (citing *Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003)); *Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein). *Cf. State v. Murphy,* 747 N.E.2d 765, 788 (Ohio 2001) (pointing out that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). Alternatively, it appears that the claim, which was apparently based on a "typographical error" in the bill of particulars (*see* Doc. 6, Ex. 11, pp. 13-14, at PAGEID#: 161-62), is not subject to review because it presents an issue of state-law only, which this Court lacks jurisdiction to consider. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

the trial court's denial of his motion to suppress evidence that was obtained against petitioner during searches conducted by law enforcement officers at the Highland County Sheriff's Department. (*See* Doc. 1, at PAGEID#: 5; *see also* Doc. 10, at PAGEID#: 282-84). Respondent contends in the return of writ that the claim is barred from review under the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465 (1976). (*See* Doc. 7, pp. 9-10, at PAGEID#: 261-62). Respondent's argument has merit.

In *Stone*, the Supreme Court held that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*, 428 U.S. at 494-95. The Sixth Circuit has developed a two-step inquiry in assessing whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Rivera v. Warden, Chillcothe Corr. Inst.,* No.

6

1:11cv690, 2012 WL 6756254, at *6 (S.D. Ohio Aug. 20, 2012) (Wehrman, M.J.) (Report & Recommendation) (citing *Hillman v. Beightler,* No. 5:09cv2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010)), *adopted,* 2013 WL 25771 (S.D. Ohio Jan. 2, 2013) (Dlott, J.).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts. *Rivera, supra,* 2012 WL 6756254, at *8 (quoting *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003)).[4]

> As long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of procedures that are "suitably crafted" to test for possible Fourth Amendment violations, a federal habeas court does not have the power, under *Stone*, to "second-guess the accuracy of the state courts' resolution of those claims.". . . Thus, a "mistaken outcome" of a suppression hearing that has been conducted in a state trial court, standing alone, does not deny a habeas petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims. . . . Thus, even "potentially meritorious Fourth Amendment claims" are barred by *Stone* on habeas review if the petitioner had a full and fair opportunity to litigate his claims in the state courts.

*Wynne,* 279 F. Supp.2d at 892 (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8-9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d 1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 531-32 (7th Cir. 2003)) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis*, 638 F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone*, . . . the correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated in an unpublished decision that the second *Riley* inquiry is

---

[4] The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F. Supp.2d 775 (E.D. Mich. 2009). The Sixth Circuit later reversed the district court's revised judgment granting habeas corpus relief based on that other ground. *Wynne v. Renico,* 606 F.3d 867 (6th Cir. 2010).

"not meant to be a case by case review of state court determinations," but rather "is a review of whether the state provided an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul-Mateen v. Hofbauer,* No. 98-2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000). In *Abdul-Mateen,* the court recognized that an exception was carved out in *Riley* for "egregious error in the application of fourth amendment principles" amounting to a refusal by the state courts to consider or apply controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble*, "a federal habeas court *might* be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone*." *Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89-3740, 1990 WL 223036, at *3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive

8

law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). Indeed, to the contrary, it is clear from the record that petitioner was able to fully and fairly litigate his Fourth Amendment claim in the state courts.

First, petitioner was able to present his claim to the trial court by way of a suppression motion. (*See* Doc. 6, Ex. 3). It further appears from the record that before ruling on the motion, the trial court held a hearing where defense counsel was provided the opportunity to present evidence on petitioner's behalf and to assert arguments in support of the suppression motion. (*See id.*, Ex. 4). Second, after the trial court denied the suppression motion, petitioner was not prohibited from challenging the trial court's decision on appeal. Indeed, petitioner availed himself of the opportunity by arguing on appeal to the Ohio Court of Appeals and Ohio Supreme Court that evidence obtained by the police should have been suppressed based on the alleged violation of his Fourth Amendment right against unreasonable searches and seizures. (*See id.*, Exs. 8, 10, 15). Specifically, petitioner challenged the validity of his former wife's consent to search all the residences located on the property. (*See id.*). The Ohio Court of Appeals, which was the last state court to issue a reasoned decision addressing the merits of petitioner's claim, considered the Fourth Amendment issues presented by the petitioner under applicable precedents then in effect in determining that petitioner's claim lacked merit. (*See id.*, Ex. 11, pp. 4-7, at PAGEID#: 152-55).

By filing a pretrial motion to suppress and taking a direct appeal to the Ohio Court of Appeals from the denial of the suppression motion, petitioner used Ohio's procedural mechanism deemed adequate for the full and fair litigation of a Fourth Amendment claim. *Cf. Loza,* 705 F. Supp.2d at 860 (and cases cited therein). Therefore, his claim was not thwarted by any failure in that mechanism.

Accordingly, in sum, the undersigned concludes that the Fourth Amendment claim alleged in Ground One of the petition is barred from review under the Supreme Court's *Stone* decision. Federal habeas review is prohibited because petitioner was provided a full and fair opportunity in the state courts to litigate the claim, and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Cf. Stone*, 428 U.S. at 494-95. Therefore, petitioner is not entitled to relief based on such claim.

### B. Petitioner Is Not Entitled To Relief Based On The Ineffective-Assistance-Of-Trial-Counsel Claim Alleged In Ground Two Of The Petition

In Ground Two of the petition, petitioner contends that his trial attorney was ineffective because counsel did not object to the State's "admission of expert testimony establishing the presence of methamphetamine on numerous exhibits prior to establishing the chain of custody," as required by Ohio R. Evid. 703. (Doc. 1, at PAGEID#: 6). The ground for relief, which exhausted by petitioner in the state direct review proceedings, is subject to review on the merits.

Nevertheless, this Court's review is limited. Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

*Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an

'unreasonable application' of clearly established federal law when 'the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at

413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's
> standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398,
> 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the
> record before the state court where a claim has been adjudicated on the merits by
> the state court). It is not enough for us to determine that the state court's
> determination is *incorrect*; to grant the writ under this clause, we must hold that
> the state court's determination is *unreasonable.* . . . This is a "substantially higher
> threshold." . . . To warrant AEDPA deference, a state court's "decision on the
> merits" does not have to give any explanation for its results, *Harrington v.*
> *Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor
> does it need to cite the relevant Supreme Court cases, as long as "neither the
> reasoning nor the result of the state-court decision contradicts them." *Early v.*
> *Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court has further held that when a state court rules

against a defendant in an opinion that "addresses some issues but does not expressly address the

federal claim in question," the federal habeas court must presume, subject to rebuttal, that the

federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of

review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete

bar on federal-court relitigation of claims already rejected in state proceedings" and "preserves

11

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412); *see also White v. Woodall*, __ U.S. __, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, __ U.S. __, 132 S.Ct. 1181, 1187 (2012) (internal citation and quotation marks omitted)) ("[C]learly established Federal law' for purposes of § 2254(d)(1) includes 'only the holdings, as opposed to the dicta, of this Court's decisions."). Decisions by lower courts are relevant only "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

In this case, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing petitioner's ineffective-assistance-of-trial-counsel claim, which was raised as part of petitioner's second assignment of error. (*See* Doc. 6, Exs. 8, 11). The court overruled the claim of error, reasoning in relevant part as follows:

> Criminal defendants have a constitutional right to the effective assistance of counsel. See *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). . . . To establish constitutionally ineffective assistance of trial counsel, a criminal defendant must show that (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced his defense and deprived him of a fair trial. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). . . . "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show <u>a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.</u>" (Emphasis added.). . . .
>
> In the case at bar, appellant's contention appears to be that defense counsel failed to properly challenge the chain of evidence before a BCI witness testified. A statement in his brief, however, appears to undermine this point:
>
>> "Granted both the underlying facts relating where the items containing methamphetamine were recovered, and the chain of custody that brought these [items] to the witness for analysis, were admitted later, during the course of the trial, but this was in clear contravention of Evidence Rule 705 which provides that . . . the facts or data upon which the experts opinion is based, are to be disclosed prior to rendering the opinion." (Appellant's brief page 17.)
>
> This statement indicates that even if the underlying facts of an expert BCI witness's opinion should have been detailed before the witness expressed an opinion, the result of the case would not have been different. Moreover, the admission of several witnesses, including Lacey Kelley, also established that appellant possessed the chemicals for the manufacture of methamphetamine and did, in fact, manufacture that drug.

(*Id.*, Ex. 11, pp. 7-9, at PAGEID#: 155-57) (footnote and Ohio case citations omitted).

In its decision, the Ohio Court of Appeals correctly identified the clearly-established two-prong standard of review enunciated by the Supreme Court in *Strickland* as the applicable

standard to apply in addressing petitioner's ineffective-assistance-of-counsel claim. As the state

appellate court recognized, to establish that his trial counsel was ineffective under *Strickland*,

petitioner was required to demonstrate both (1) his trial attorney's conduct was constitutionally

deficient; and (2) the attorney's deficient performance prejudiced the defense. *See Strickland*,

466 U.S. at 687. Under the first prong of the *Strickland* test, petitioner had to show that his

counsel's representation fell below an objective standard of reasonableness based on all the

circumstances surrounding the case. *Id.* at 688. Judicial scrutiny must be highly deferential, and

a "fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight" and to evaluate the challenged conduct from counsel's

perspective at the time the conduct occurred. *Id.* at 689. In determining whether or not counsel's

performance was deficient, the court must indulge a strong presumption that the challenged

conduct fell within the wide range of reasonable professional assistance. *Id.*

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner had to

demonstrate that a "reasonable probability" exists that, but for his counsel's alleged error, the

result of his trial would have been different. *See Strickland,* 466 U.S. at 694. That burden is

satisfied only by a showing that the result of the trial would "reasonably likely have been

different absent the error[]." *Id.* at 695.

The court need not examine the question of whether counsel's performance was deficient

before addressing the question of whether petitioner was prejudiced by counsel's performance.

The court may dispose of an ineffective-assistance-of-counsel claim by finding that petitioner

made an insufficient showing on either ground. *Id*. at 697.

In this federal habeas action, this Court must employ a "doubly deferential" standard of

review in evaluating the reasonableness of the Ohio Court of Appeals' adjudication of

petitioner's claim under *Strickland*. *See Woods v. Daniel*, __ U.S. __, 135 S.Ct. 1372, 1376

(2015) (per curiam); *Burt v. Titlow*, __ U.S. __, 134 S.Ct. 10, 13 (2013); *Premo v. Moore*, 562

U.S. 115, 122-23 (2011) (quoting *Harrington*, 562 U.S. at 104-05); *Knowles v. Mirzayance*, 556

U.S. 111, 123 (2009). Although "[s]urmounting *Strickland*'s high bar is never an easy task,"

*Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)), the

AEDPA requires that a second layer of deference be accorded the state courts' adjudication of

ineffective assistance of counsel claims. The Supreme Court has explained:

> Even under *de novo* review, the [*Strickland*] standard for judging counsel's
> representation is a most deferential one. . . .
>
> ****
>
> Establishing that a state court's application of *Strickland* was unreasonable under
> § 2254(d) is all the more difficult. The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," . . . and when the two apply in tandem,
> review is "doubly" so. . . . The *Strickland* standard is a general one, so the range
> of reasonable applications is substantial. . . . Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable. The question is whether there is any
> reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689, and *Knowles*, 556 U.S. at

123); *see also Premo*, 562 U.S. at 122-23. Therefore, on federal habeas review, "[t]he pivotal

question is whether the state court's application of the *Strickland* standard was unreasonable,"

which "is different from asking whether defense counsel's performance fell below *Strickland*'s

standard." *Harrington*, 562 U.S. at 101.

Here, the Ohio Court of Appeals determined that petitioner had not met his burden of

proving under the second, "prejudice" prong of the *Strickland* test that, but for counsel's alleged

error, the result of the trial would reasonably likely have been different. (*See* Doc. 6, Ex. 11, p.

9, at PAGEID#: 157); *see also Strickland*, 466 U.S. at 695. The state appellate court's

determination did not constitute an unreasonable application of *Strickland*.  As the Ohio court found, and as petitioner has conceded both on direct appeal and in his "traverse" brief filed in the instant action (*see* Doc. 6, Ex. 8, at PAGEID#: 89; Doc. 10, at PAGEID#: 288), the chain of custody establishing the proper foundation for the expert's testimony was ultimately disclosed to the jury during the trial.  Furthermore, given the other evidence that was introduced at trial to establish petitioner's guilt, it was reasonable for the Ohio court to conclude that the alleged violation of an Ohio evidentiary rule did not have a prejudicial effect on the jury in reaching its verdicts of guilt in this case.

Accordingly, in sum, upon review of the present record, and under the double-layer deferential standard of review that must be applied by this Court, the undersigned concludes that the Ohio Court of Appeals' adjudication of the ineffective-assistance-of-trial-counsel claim alleged in Ground Two of the petition is neither contrary to nor an unreasonable application of *Strickland*.  Petitioner has not shown that the state court's rejection of his claim of constitutional error by counsel "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *See Harrington*, 562 U.S. at 103.  Therefore, petitioner has not demonstrated that he is entitled to habeas corpus relief based on such claim.

### C. Petitioner Is Not Entitled To Relief Based On The Ineffective-Assistance-Of-Appellate-Counsel Claim Alleged In Ground Three, Which Was Procedurally Defaulted And, In Any Event, Lacks Merit

In Ground Three of the petition, petitioner claims that his appellate counsel was ineffective for failing to effectively assert an ineffective-assistance-of-trial-counsel claim on direct appeal based on trial counsel's alleged failure to object to the State's repeated use of leading questions.  (*See* Doc. 1, at PAGEID#:  8).  The underlying ineffective-assistance-of-

trial-counsel claim was raised by appellate counsel to the extent that the claim was presented as an "issue" for consideration in the second assignment of error. (*See* Doc. 6, Ex. 8). It appears, however, that petitioner is arguing that the underlying claim should have been presented as a separate assignment of error given that the Ohio Court of Appeals never addressed that particular issue in its decision overruling petitioner's assignments of error and affirming the trial court's judgment of conviction and sentence. (*See id.*, Ex. 11).

In the return of writ, respondent contends that the ineffective-assistance-of-appellate-counsel claim alleged in Ground Three is barred from review because petitioner committed a procedural default by raising the issue only in his memorandum in support of jurisdiction to the Ohio Supreme Court and not by way of a timely application for reopening of the appeal under Ohio R. App. P. 26(B). (*See* Doc. 7, pp. 14-15, at PAGEID#: 266-67). Respondent's argument has merit.

In an analogous case, involving an ineffective-assistance-of-appellate-counsel claim asserted as an independent ground for federal habeas relief and as "cause" for the procedural default of another underlying claim of trial error, the Sixth Circuit held that the claim of ineffectiveness by appellate counsel was procedurally defaulted by the petitioner because he only raised the argument in a jurisdictional appeal to the Ohio Supreme Court, which that court declined jurisdiction to hear and summarily dismissed. *See Goldberg v. Maloney*, 692 F.3d 534, 537-38 (6th Cir. 2012). In so ruling, the court pointed out that Ohio R. App. P. 26(B) provides "a separate collateral opportunity" for defendants to raise ineffective-assistance-of-appellate-counsel claims by way of an application for reopening of the direct appeal to the Ohio Court of Appeals. *Id.* at 537 (quoting *Morgan v. Eads*, 818 N.E.2d 1157, 1158 (Ohio 2004)). The court also noted that the Ohio Supreme Court made it clear in *Ohio v. Davis*, 894 N.E.2d 1221 (Ohio

17

2008), that a decision declining to accept a discretionary appeal raising a claim of ineffective assistance of appellate counsel does not constitute a determination by the Ohio Supreme Court on the merits of that claim. *Id.* Therefore, the Sixth Circuit reasoned that although a defendant may present such claims in both a timely appeal to the Ohio Supreme Court and a timely application under Rule 26(B) to the Ohio Court of Appeals, "raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits." *Id.* at 538. The court determined that the petitioner had procedurally defaulted the ineffective-assistance-of-appellate-counsel claim because (1) the Ohio Supreme Court had declined jurisdiction and thus did not address the issue raised in the discretionary appeal, and (2) petitioner did not file an application for reopening of the direct appeal by the deadline date set forth in Ohio R. App. P. 26(B) and had "offered no cause for his delay" in filing such an application, which the court noted "would be difficult considering he was aware of the argument at the time he sought discretionary appeal." *Id.* & n.3.

More recently, a district court in Ohio relied on *Goldberg* to similarly hold that the habeas petitioner had procedurally defaulted an ineffective-assistance-of-appellate-counsel claim raised in his petition both as a ground for relief and as cause to excuse his procedural default of other habeas claims. *See Williams v. Turner*, No. 3:12cv2768, 2014 WL 4441409, at *14-15 (N.D. Ohio Sept. 9, 2014). In that case, as in *Goldberg*, the petitioner had asserted the claim as a proposition of law in a memorandum in support of jurisdiction in a discretionary appeal to the Ohio Supreme Court that was summarily dismissed. *See id.* at *6, *14. As in *Goldberg*, the court concluded that the petitioner had failed to exhaust the ineffective-assistance-of-appellate-

18

counsel claim because he "did not file a Rule 26(B) application on the issue." *Id.* at \*14. The court further determined that the claim was defaulted because the 90-day deadline set forth in Ohio R. App. P. 26(B) for filing a timely reopening application had passed and petitioner could not "assert that he was unaware of the claim since [he] raised it before the Supreme Court of Ohio." *Id.* In another case decided after *Williams*, this Court relied on *Goldberg* and *Williams* in ruling that an ineffective-assistance-of-appellate-counsel claim raised in a summarily-denied motion for delayed appeal to the Ohio Supreme Court was procedurally defaulted and thus did not constitute cause for the petitioner's default of his underlying ground for habeas corpus relief because such claim was not presented in timely Rule 26(B) reopening application. *See Andrews v. Warden, Lebanon Corr. Inst.*, No. 1:13cv727, 2014 WL 10435020, at \*17-18 (S.D. Ohio Oct. 27, 2014) (Bowman, M.J.) (Report & Recommendation), *adopted*, 2015 WL 5582241, \*4 (S.D. Ohio Sept. 23, 2015) (Barrett, J.).

In this case, petitioner similarly failed to exhaust his ineffective-assistance-of-appellate-counsel claim because he did not file a Rule 26(B) reopening application raising the claim and only presented the issue in his jurisdictional memorandum on discretionary appeal to the Ohio Supreme Court, which that court summarily declined jurisdiction to hear. (*See* Doc. 6, Ex. 17). Because the Ohio Supreme Court's ruling did not constitute a decision on the merits of petitioner's ineffective-assistance-of-appellate-counsel claim, such claim was procedurally defaulted by petitioner due to his failure to file a Rule 26(B) reopening application raising the claim within 90 days of entry of the appellate court's direct appeal decision on September 16, 2014. (*See id.*, Ex. 11). Petitioner cannot demonstrate cause for his failure to meet the 90-day filing deadline for reopening applications given that he was well aware of and asserted the argument in his *pro se* memorandum in support of jurisdiction filed with the Ohio Supreme

19

Court in February 2015. (*See id.*, Ex. 15).

In any event, even assuming, solely for the sake of argument, that petitioner's ineffective-assistance-of-appellate-counsel claim is not barred from review as a procedurally-defaulted ground for relief, the claim lacks merit. Petitioner's appellate counsel did present the underlying ineffective-assistance-of-trial-counsel claim for the Ohio Court of Appeals to consider on direct appeal. The claim was highlighted and argued in the initial appellate brief as an "issue" to be considered by the court in adjudicating the assignment of error challenging trial counsel's performance. (*See id.*, Ex. 8, at PAGEID#: 70, 90-92). The claim was sufficiently highlighted to elicit a response from the State expressly addressing the "issue" and was reemphasized by appellate counsel in the brief filed in reply to the State's response. (*See id.*, Ex. 9, at PAGEID#: 105, 119-21; Ex. 10, at PAGEID#: 130, 141-43). Petitioner has not demonstrated under the first prong of the *Strickland* test discussed above in addressing petitioner's second ground for habeas relief, *see supra* p. 14, that appellate counsel's conduct fell outside the wide range of reasonable professional assistance. *See Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). The mere fact that the Ohio Court of Appeals ultimately failed to address the issue in its direct appeal decision does not mean that petitioner's counsel acted unreasonably under the circumstances of this case. Moreover, a review of the present record does not even remotely indicate that under the second, "prejudice" prong of the *Strickland* test, *see id.* at 694-95, a reasonable likelihood exists that the result of the appeal would have been different if the claim challenging trial counsel's failure to object to leading questions had been raised by counsel as a separate assignment of error.

Accordingly, in sum, the undersigned concludes that the ineffective-assistance-of-appellate-counsel claim alleged in Ground Three of the petition is barred from review due to

petitioner's procedural default in failing to raise the claim in a timely application for reopening

of the appeal under Ohio R. App. P. 26(B).  In any event, even assuming, *arguendo*, that the

claim is not procedurally barred from review in this federal habeas proceeding, petitioner has not

demonstrated he is entitled to relief based on the merits of his claim of ineffectiveness by

appellate counsel.  Therefore, petitioner is not entitled to relief based on the claim alleged in

Ground Three of the petition.

### D. Petitioner Is Not Entitled To Relief Based On His Claim In Ground Four Challenging The Trial Court's Failure To Merge His Convictions

In Ground Four of the petition, petitioner alleges that he is entitled to federal habeas relief

because the trial court erred when it failed to merge his convictions as allied offenses of similar

import under Ohio Rev. Code § 2941.25.  (Doc. 1, at PAGEID#:  9).  Although couched in terms

of Ohio law, the claim implicitly raises the issue whether petitioner received multiple

punishments for the same offense in violation of the Constitution's Double Jeopardy Clause.  *Cf.*

*Render v. Warden, Southern Ohio Corr. Fac.*, 889 F. Supp.2d 1014, 1043-47 (S.D. Ohio 2012).

The Ohio Court of Appeals was the last state court to issue a reasoned decision

addressing the merits of petitioner's claim.  All of the judges on the three-judge panel found no

merit to the claim as a matter of Ohio law.  (*See* Doc. 6, Ex. 11, pp. 9-12, 16, at PAGEID#: 157-

60, 164).  In the majority decision, the court reasoned in relevant part as follows:

> Appellant's . . . assignment of error involves the trial court's decision to not
> merge the two convictions for the illegal manufacture with the conviction for the
> illegal possession of chemicals used in the manufacture of a controlled substance.
> The trial court addressed this issue directly and opined:
>
>> " * * * The first thing I'm going to consider is the question of
>> merger of Count Three with Counts One and Two.  Counts One
>> and Two were clearly committed on separate days, the 13th and the
>> 27th of June.  Count Three was an alleged continuing course of
>> conduct.  The Court will note that . . . Counts One and Two are
>> actual production of methamphetamine; and, there was testimony

21

in the record that there was actual meth produced on both dates.
* * *

The testimony is that there was extensive chemicals kept in two
different locations on the same property, two different campers that
is, there were extensive items in both places. There was testimony
from Ms. Kelley that the Defendant cooked every day, so it
appears he had an on-going supply of ingredients to assemble or to
engage in the production of methamphetamine.

It appears, therefore, that these were committed with separate
animus, and that . . . the conduct, while you must have the
chemicals to commit Counts One and Two, it appears from the
testimony that there were always plenty of chemicals there to
produce the meth whenever desired."

Appellant does not challenge the trial court's recitation of the evidence, but
argues that it erred in applying the law.

The application of R.C. 2941.25 (the merger statute) is a legal issue. Thus, an
appellate court will review a trial court's decision de novo without affording it
any deference. . . .

In *State v. Nguyen*, 4th Dist. Athens No. 12CA14, 2013-Ohio-3170, ¶ 103, we set
forth the analysis that applies when determining if offenses should merge under
R.C. 2941.25:

"Through a series of opinions the Supreme Court of Ohio has
advised and re-advised lower courts on the difficult task of
applying Ohio's multiple-count statute to determine which
criminal convictions require merger. . . .  In the plurality decision
of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942
N.E.2d 1061, the Court expressly overruled its then current test for
merger. Under the new test, the trial court must first determine
'whether it is possible to commit one offense and commit the other
with the same conduct, not whether it is possible to commit one
without committing the other.' . . . *Johnson* at ¶48. If the offenses
are so alike that the same conduct can subject the accused to
potential culpability for both, they are 'of similar import' and the
court must then proceed to the second step. The court must then
determine whether the offenses in fact were committed by the
same conduct, i.e., committed as a single act with a single animus.
Id. at ¶49. If so, merger is necessary. However, if the offenses
resulted from separate acts or were performed with a separate
animus, or if the commission of one offense will never result in the
commission of the other, the offenses will not merge. Id. at ¶51."

In the case sub judice, the facts adduced at trial appear to satisfy the first part of this new test. It is indeed possible to possess the chemicals necessary to manufacture meth, and then to manufacture the drug itself. We, however, agree with the trial court's analysis with regard to the second part of this test. In other words, were these crimes committed by the same conduct or with the same animus? We agree with the trial court that the answer is no.

Counts one and two of the indictment charged the appellant with manufacturing meth on specific dates. However, count three charged him with having the requisite chemicals to manufacture meth during the interval between those dates. Appellant does not challenge the sufficiency of the evidence to support convictions on those three counts, and we find sufficient evidence from our review of the record. Assuming, for purposes of argument, that had appellant been found guilty of the possession of chemicals and the manufacture of meth on the same days, a different issue may have been presented. Instead, appellant possessed those chemicals for more than a week between the two dates on which he was charged with illegal manufacture and, apparently, appellant engaged in an extensive cooking process. In our view, the trial court was correct, that a separate animus exists for count three. Thus, the merger of the convictions is not required under R.C. 2941.25(A).

(Doc. 6, Ex. 11, pp. 9-12, at PAGEID#: 157-60) (footnotes and some Ohio case citations omitted).[5] The third judge on the panel issued the following concurring opinion addressing the merger issue:

The trial court did not merge the counts because "while you must have chemicals to commit Counts One and Two (the illegal manufacture counts), it appears from the testimony that there were always plenty of chemicals there to produce the meth whenever." That is, there is testimony that Lacey Kell[e]y got chemicals for Sluss to manufacture methamphetamine that Sluss cooked "about every day."

Based on the evidence adduced at trial, it is clear that Sluss had chemicals used to manufacture methamphetamine "over and above" what he used in the two "cooks" on June 13 and 27 that formed the basis for Counts One and Two. Under these circumstances, I concur in judgment and opinion on this assignment of error, i.e., that although the offenses in Counts One and Two and Three are of similar import, they involve different conduct; Count Three involved possession

---

[5] In one of the omitted footnotes, the Ohio Court of Appeals' majority acknowledged that "colleagues" on another court of appeals had concluded that the crimes of illegal possession of chemicals and illegal manufacture of drugs were "allied offenses of similar import," which "had to be merged." (*See* Doc. 6, Ex. 11, p. 12 n.7, at PAGEID#: 160). However, the majority went on to note that the other case was factually distinguishable because, unlike the instant case, "a close review of the fact[s]" in that case "reveal that only one encounter occurred between police and the appellants." (*See id.*).

of illegal chemicals in addition to what was used in the two "cooks" that are the basis of Counts One and Two.

(*Id.*, p. 16, at PAGEID#: 164).

As an initial matter, to the extent that petitioner claims that his convictions and sentences violate Ohio Rev. Code § 2941.25 or that the state court misapplied or misinterpreted the state statutory provision in this case, he has not stated a cognizable ground for relief. In this federal habeas proceeding, the Court has jurisdiction to review petitioner's claims only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). "[B]ecause the state courts are final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters." *Bennett v. Warden, Lebanon Corr. Inst.,* 782 F. Supp.2d 466, 478 (S.D. Ohio 2011) (and cases cited therein); *see also Warner v. Zent*, 997 F.2d 116, 133 (6th Cir. 1993) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975)) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law"); *Jones v. Woods*, 635 F. App'x 254, 257 (6th Cir. 2015) (citing *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005)) (in affirming the district court's denial of a habeas petition based on a claim that the petitioner's trial counsel was ineffective for failing to request a self-defense jury instruction, the Sixth Circuit emphasized that "[w]e are bound by the [state] Court of Appeals' determination that [the petitioner] was not entitled to the instruction under state law"); *Meyers v. Ohio*, No. 1:14cv1505, 2016 WL 922633,

24

at *7 (N.D. Ohio Jan. 21, 2016) (Report & Recommendation) (citing *Olsen v. McFaul*, 843 F.2d

918, 929 (6th Cir. 1988)) ("federal habeas courts are bound by decisions of intermediate state

courts on questions of state law unless convinced that the state's highest court would decide the

issue differently"), *adopted*, 2016 WL 916602 (N.D. Ohio Mar. 9, 2016). *Cf. Sheffey v.*

*Bradshaw,* No. 1:14cv1329, 2015 WL 9591535, at *17 (N.D. Ohio Sept. 30, 2015) (Report &

Recommendation) (finding that the petitioner's claim that the "trial court 'failed to properly

apply Ohio's allied offenses statute' . . . is not cognizable . . . in a federal habeas corpus action"),

*adopted*, 2015 WL 9491230 (N.D. Ohio Dec. 30, 2015); *Ragland v. Tibbals*, No. 5:12cv2526,

2015 WL 3454882, at *2, *12 (N.D. Ohio May 29, 2015) (holding that because "a federal habeas

court may not consider a claim asserting a violation of an Ohio statute," the petitioner had not

stated a cognizable claim to the extent that he contended "his convictions and sentence violate

O.R.C. § 2941.25").

  In addition, petitioner is not entitled to federal habeas relief to the extent that he contends

the trial court's refusal to merge his convictions violated the Fifth Amendment's Double

Jeopardy Clause. In *Volpe v. Trim*, 708 F.3d 688, 696-97 (6th Cir. 2013), the Sixth Circuit

provided the following guidance for review of such a claim:

> The Double Jeopardy Clause of the Fifth Amendment, made applicable to the
> states through the Fourteenth Amendment, provides that no person shall "be
> subject for the same offence to be twice put in jeopardy of life or limb." U.S.
> Const. amend. V; *see Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23
> L.Ed.2d 707 (1969). "The Double Jeopardy Clause 'protects against a second
> prosecution for the same offense after acquittal. It protects against a second
> prosecution for the same offense after conviction. And it protects against multiple
> punishments for the same offense.'" *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct.
> 2221, 53 L.Ed.2d 187 (1977). . . . Only the last aspect, the protection against
> multiple punishments, is at issue here.
>
> The Supreme Court has interpreted the multiple-punishments aspect of the Double
> Jeopardy Clause as protecting defendants from being punished more than once for
> a single act when the legislature does not intend for the punishments to be

cumulative. *See Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In other words, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). . . .

In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. 180. The *Blockburger* test, however, is a "rule of statutory construction," *Albernaz*, 450 U.S. at 340, 101 S.Ct. 1137 . . ., "not a constitutional test in and of itself," *McCloud v. Deppisch*, 409 F.3d 869, 875 (7th Cir. 2005), *as quoted in Palmer v. Haviland*, 273 Fed.Appx. 480, 486 (6th Cir. 2008) (unpublished); *see Hunter*, 459 U.S. at 368, 103 S.Ct. 673 (explaining that the *Blockburger* test, as modified by subsequent precedent, "is not a constitutional rule requiring courts to negate clearly expressed legislative intent"). As a result, the *Blockburger* test "does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." [*Ohio v. Johnson*, 467 U.S. 493, 499 n.8, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984)]; *accord Hunter*, 459 U.S. at 368-69, 103 S.Ct. 673.

Moreover, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citing *Hunter*, 459 U.S. at 368, 103 S.Ct. 673; *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974)). "Under the [D]ouble [J]eopardy [C]lause, when evaluating whether a state legislature intended to prescribe cumulative punishments, a federal habeas court must defer to that determination." *Id.*; *see Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010) ("[W]hen the charged offenses violate state law, the double jeopardy analysis hinges entirely on the state-law question of what quantum of punishment the state legislature intended. Once a state court has answered that state-law question, there is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes." (internal citation and alteration omitted)).

Here, the Ohio courts properly examined the issue of whether the Ohio General

Assembly intended to authorize the cumulative punishments in this case under Ohio Rev. Code §

2941.25, the state's multi-count statute, which provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

*See Volpe*, 708 F.3d at 697; *see also Sheffey, supra*, 2015 WL 9591535, at *18; *Ragland, supra*,

2015 WL 3454882, at *14.  The Ohio Court of Appeals determined that cumulative punishments

could be imposed under that statute because: (1) the two illegal-manufacture offenses charged in

Counts One and Two involved separate conduct committed on two different days, occurring two

weeks apart from each other in June 2013; and (2) although the illegal-assembly offense charged

in Count Three was of similar import to the illegal-manufacture offenses under Ohio Rev. Code

§ 2941.25(A), cumulative punishments could be imposed under § 2941.25(B) because the

offense involved a separate animus or conduct in light of evidence presented at trial showing that

petitioner possessed chemicals to manufacture methamphetamine during the period between the

two illegal-manufacture offenses.   This Court must defer to and is bound by the Ohio appellate

court's determination of the state-law issue, which was made in accordance with standards set

forth in the applicable state multi-count statute.  *Cf. Sheffey, supra*, 2015 WL 9591535, at *18;

*Ragland, supra*, 2015 WL 3454882, at *17-18.  In any event, petitioner has not demonstrated

that the state court's determination that cumulative punishments were permissible under Ohio

Rev. Code § 2941.25 either is contrary to or involves an unreasonable application of the relevant

27

Supreme Court precedents governing the multiple-punishment aspect of the Double Jeopardy Clause.  *See* 28 U.S.C. § 2254(d).

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief based on the claim alleged in Ground Four of the petition challenging the trial court's failure to merge his convictions.  This Court lacks jurisdiction to consider any claim by petitioner that the trial court violated Ohio law in failing to merge his convictions.  Moreover, to the extent petitioner alleges that he received multiple punishments for the same offense in violation of the Fifth Amendment's Double Jeopardy Clause, petitioner has not demonstrated that the state court's determination that cumulative punishments were permissible under standards set forth in the applicable state multi-count statute is either contrary to or involves an unreasonable application of clearly-established federal law, as determined by the United States Supreme Court.

## IT IS THEREFORE RECOMMENDED THAT:

1. The petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the ineffective-assistance-of-appellate-counsel claim alleged in Ground Three of the petition, which this Court has concluded is procedurally barred from review, because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling or whether petitioner has stated a viable constitutional claim in the defaulted ground for relief.

In addition, a certificate of appealability should not issue with respect to the remaining grounds for relief alleged in the petition because petitioner has not stated in those grounds a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to

deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: *Aug. 29, 2016*

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RICHARD SLUSS,
    Petitioner,

vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION
    Respondent.

Case No. 1:15-cv-395

Bertelsman, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc